UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 18-CR-195 (JAM) |
| v. ) | |
| ) | July 29, 2019 |
| FAREED AHMED KHAN, ) | |
| ) | |
| Defendant. ) | |

**THE GOVERNMENT'S MOTIONS *IN LIMINE***

The United States of America, by and through the undersigned attorneys, respectfully submits the following three motions *in limine*. First, the government intends to introduce evidence in its case-in-chief concerning the defendant's use and facilitation of Hussain Chippa as a "hawaladar," or illegal money remitter, and evidence connecting that arrangement to terrorism. Because this evidence is inextricably intertwined with the defendant's false statements made in a terrorism investigation, or, in the alternative, constitutes admissible extrinsic evidence under Federal Rule of Evidence 404(b), the Court should allow its admission at trial.

Second, because the defendant has waived any selective-prosecution defense and cannot prove such a legal claim, the government respectfully requests this Court preclude him from asserting any variant of the defense to the jury at trial.

Finally, consistent with the defendant's proffer agreement and rebuttal waiver, the government reserves the right to use certain of the defendant's proffered statements in the event he opens the door to their use at trial.

**BACKGROUND**

This case stems from a terrorism investigation into Fareed Ahmed Khan and others for providing material support to a foreign terrorist organization. Khan is a 61-year-old naturalized citizen of the United States who was born in Pakistan, immigrated to the United States, and was

1

naturalized on February 21, 2003. During the course of the investigation, Khan lived with his wife and two sons in Manchester, Connecticut, where he worked at Pep Boys as a mechanic, making approximately $34,000 a year. While in Connecticut, Khan was also the Regional Director of the Islamic Circle of North America ("ICNA"). In that role, he was responsible for collecting cash and check donations to ICNA for its various charitable events.

During the course of the investigation, which began in early Spring 2014, the Federal Bureau of Investigation ("FBI") determined that the defendant repeatedly received multiple cash deposits into his bank account, amounting to over $200,000 over the course of about eight years. The FBI also discovered that the defendant was transacting with a man named Hussain Chippa from Pakistan. Chippa would arrange for third parties to make deposits into the defendant's bank account to fund medical equipment purchases Chippa made from Pakistan using the defendant's Paypal and eBay accounts. The medical equipment included various monitors, endoscopy scopes, and other equipment typically used to treat gastrointestinal maladies. The defendant then collected the purchased medical equipment, repackaged it, and sent it to two different names that were not Chippa, all to the same address in Pakistan.

The defendant eventually admitted to the FBI that his shipping arrangement with Chippa was a "hawala," or an illegal alternative remittance system to transfer money overseas.[1] The investigation further revealed that the defendant on multiple occasions used Chippa as a "hawaladar" to give money to his brother in Pakistan, Naveed, who supported Falah-i-Insaniat

---

[1] According to the United States Department of the Treasury, a "hawala" is an alternative or parallel remittance system that originated in South Asia. Dependent on family and regional relationships, a "hawala" works by transferring money without actually moving it. For example, individuals in the United States who wish to give money to family in Pakistan can place requests and payments with a "hawaladar" in the United States, who communicates the requests to a counterpart-hawaladar in Pakistan, who makes the requested payments to the family in Pakistan.

Foundation ("FIF"), a foreign terrorist organization associated with Lashkar-e-Tayyiba ("LeT") and Jamaat-ud-Dawa ("JUD").  Specifically, on July 25, 2014, Naveed posted the following message on the defendant's Facebook account:

> Light the lamp of hope. Be it an earthquake or a flood; participate in this movement for Islamic dominance by giving zakat, sadaqat, donation [and/or] fitrana to Falah-e-Insaniyat Foundation, [which is] actively involved in helping oppressed Muslims and in serving suffering humanity.

Naveed's post also listed "Dr. Naveed" as the contact along with a phone number known to belong to Naveed.  Within hours of receiving this message, the defendant wrote the following to his brother via WhatsApp: "$50 fitra & $100 for fidya.  Please pay.  Zakat I paid already."

On June 26, 2015, the FBI interviewed the defendant with an attorney present.  During the course of that interview, the FBI agents notified the defendant that they were conducting a terrorism investigation, and asked multiple questions about ICNA and packages to Pakistan. Despite his role of collecting cash donations to the charity for years, Khan responded, in part, that he was not affiliated with ICNA or any of its related entities, was not aware of any ICNA office or representative operating within Connecticut, and did not maintain any association with anyone from ICNA.  Khan asserted that he had never collected any type of charitable donation on behalf of ICNA or any other charitable organization.  As for packages to Pakistan, the defendant responded that, with the exception of shipping items such as clothing to his brother and sister in Pakistan, he had never shipped any items to anyone in Pakistan.

Later, on October 13, 2015, the FBI searched the defendant's home, cellular phone, and Facebook accounts pursuant to a federal search warrant.  At Khan's home, agents discovered numerous items related to Khan's role in ICNA, including handbooks, badges, and fliers.  In Khan's phone, agents discovered WhatsApp messages between Khan and Chippa detailing Khan's involvement in multiple shipments of medical equipment to Pakistan.

Moreover, agents recovered text messages between Khan and his brother, Naveed, that demonstrated that the defendant used Chippa as a "hawaladar" to get money to his brother. On June 5, 2015, for example, the defendant directly communicated with Chippa, asking him to pay Naveed on the defendant's behalf. The defendant messaged, "Naveed need $1000 is possible you give him." Chippa replied, "oh yes I will." Later, on June 17, 2015, Chippa confirmed that he had made the defendant's requested payment to Naveed, writing to the defendant that he had given "Naveed Bhai … Rs 100,000."

## DISCUSSION

**I.   The Government Seeks to Admit Certain Evidence as Intrinsic or, Alternatively, Extrinsic to his False Statements in a Terrorism Investigation.**

The government intends to offer evidence of the defendant's "hawala" arrangement with Hussain Chippa, and evidence connecting that arrangement to terrorism. Specifically, the government plans to admit the following evidence in its case-in-chief: (1) financial and electronic records detailing the defendant's shipping arrangement with Chippa; (2) the defendant's electronic and verbal admissions that this agreement was a "hawala" that he, in part, used to pay money to his brother, Naveed; (3) the brother's solicitation for contributions to FIF which he posted on the defendant's Facebook page; and (4) testimony that LeT, FIF, and related entities are terrorist organizations that have used "hawalas" to finance their operations.

*A.  Legal Standard*

The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.E. 401. Hence, where the evidence directly addresses an element of the crime, it is relevant. *See United States. v. Armone*, 363 F.2d 385, 403 (2d Cir. 1966) (holding that because agreement is an element of conspiracy,

evidence of association was relevant). Moreover, as the Second Circuit has repeatedly articulated, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt."). Any evidence dubbed relevant is admissible under Rule 402. *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990); *see also Gonzalez*, 110 F.3d at 941.

Rule 403 provides a narrow exception to the broad admissibility of relevant evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"Since the Rule governs the exclusion of relevant, probative evidence, prohibiting the use of evidence on this basis 'is an extraordinary remedy that must be used sparingly.'" *United States v. Ferguson*, 246 F.R.D. 107, 117 (D. Conn. 2007) (quoting *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990)).

At the heart of any Rule 403 analysis is whether the relevant evidence at issue is "unfairly prejudicial." For purposes of Rule 403, "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citing *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). "[T]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Id*. And

5

any such unfair prejudice must substantially outweigh the evidence's probative value before it is excluded. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997).

Alternatively, Rule 404(b) provides that evidence of a crime, wrong, or other acts may be admissible for purposes other than showing a propensity to commit crimes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Like Rule 403, Rule 404(b) operates as a rule of inclusion. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996); *United States v. Stevens*, 80 F.3d 60, 67 (2d Cir. 1996); *United States v. Pipola*, 83 F.3d 556, 565 (2d Cir. 1996); *United States v. Muniz*, 60 F.3d 65, 69 (2d Cir. 1995); *United States v. DeVillio*, 983 F.2d 1185, 1194 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992).

Since a district court is in the best position to evaluate the evidence and its effect on the jury, its rulings on admissibility of evidence under Rules 403 and 404(b) will not be overturned on appeal absent a clear showing of abuse of discretion. *United States v. Smith*, 727 F.2d 214, 220 (2d Cir. 1984); *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004) (articulating the well-settled legal principle that district courts have "broad discretion" in evaluating the admissibility of evidence at trial); *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (internal citation and quotation marks omitted) (noting the standard of review concerning the "admission of evidence" is "abuse of discretion, which [the appellate court] will only find if the district court acted arbitrarily and irrationally".

> B. *The Defendant's "Hawala" Arrangement with Chippa and its Connections to Terrorism*

As direct evidence of the charged offense, the government anticipates admitting evidence of the defendant's "hawala" relationship with Chippa dating from at least 2007 through 2015, and evidence connecting this relationship to terrorism – to wit, that the defendant used this relationship

to pay his brother in Pakistan, who was a known terrorist sympathizer, and that foreign terrorist organizations are known to use alternative remittance systems to finance themselves.

As detailed in the Indictment, the defendant is charged with making materially false statements to the FBI in a matter involving international terrorism, in violation of 18 U.S.C. § 1001.  Section 1001 requires the government to prove the following elements: that (1) the defendant made the statement charged in the Indictment; (2) the statement was material to the FBI; (3) the statement was false, fictitious, or fraudulent; (4) the defendant acted knowingly and willfully; and (5) the defendant made the statement in a matter within the jurisdiction of the government of the United States.  *See generally* Leonard B. Sand et al., *Modern Federal Jury Instructions: Criminal*, Instruction 36 (2012).  Additionally, if the jury finds that the defendant is guilty, it must also determine whether the government proved beyond a reasonable doubt that the defendant's offense involved international terrorism.  18 U.S.C. § 1001(a)(2).

The Indictment specifically identifies a number of false statements, including that "the only packages he ha[d] ever sent to Pakistan were to his brother and sister containing clothing." Indictment at 2.  To successfully prosecute the defendant, the government must, in part, prove that this was false.  In other words, the government must prove that the defendant sent packages to people other than his family in Pakistan or that those packages contained something other than clothing.  His financial-account, shipment history, and related WhatsApp messages are relevant to that end: The defendant sent dozens of packages of medical equipment to people other than his family in Pakistan over a multi-year period at Chippa's request and instruction.  This evidence not only directly proves that the defendant lied, but also evidence that he intended to lie.  The defendant did not simply forget one instance of shipping a gift to a friend; rather, he was a critical cog in Chippa's system of medical-equipment shipments, allowing unidentified and unknown people to

deposit more than $200,000 into his personal bank account and shipping numerous packages to Chippa every year.

The government also must prove that the charged offense involved international terrorism. Under Section 2331, "international terrorism" includes any activities that, *inter alia*, "involve … acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C.18 U.S.C. § 2331. The evidence concerning the defendant's use and facilitation of Chippa's "hawala" business to pay money to his brother, as well as testimony concerning the use of "hawalas" to finance LeT's terrorism, provides the necessary context to the FBI's investigation of the defendant. This was not simply a money-laundering investigation; it was a terrorism-financing investigation concerning the material support to LeT/FIF, which are foreign terrorist organizations. At the time of the investigation, the FBI not only discovered the suspicious money and shipment scheme described above, but also evidence that the defendant used Chippa to provide money to his brother who supported and sought donations for FIF. In sum, the defendant lied to the FBI in the midst of a legitimate investigation into whether the defendant was part of a network providing money to a foreign terrorist organization. All of this evidence, therefore, is directly relevant to Count One.

And, as here, when relevant evidence is coextensive with the requirements of proof – that is, where the evidence directly relates to the elements of the offense charged in the indictment – it cannot, by definition, be unfairly prejudicial. *See United States v. Cruz Kuilan*, 75 F.3d 59, 61 (1st Cir. 1996) ("[H]ere, as in *Rivera Gomez*, [67 F.3d 993, 996-98 (1st Cir. 1995)] the 'evidence at issue [was] so tightly linked to guilt as defined by the elements of the offense, [that] it would be surpassingly difficult to justify a finding of unfair prejudice stemming from its introduction.'");

8

*see also, e.g., United States v. Wacker*, 72 F.3d 1453, 1469 (10th Cir. 1996) (where evidence is integrally related to the criminal activities charged in the indictment it is admissible). While evidence that the defendant helped run an alternative remittance system popular with terrorist organizations and used that system to pay his brother who supported FIF is prejudicial, it is not *unfairly* so. Rather, it is inextricably intertwined with the charge that he committed an offense involving international terrorism.

Alternatively, the government respectfully submits that the evidence at issue is admissible at trial pursuant to Rule 404(b). That the defendant engaged in an eight-year, medical-equipment shipment scheme with Chippa in Pakistan demonstrates his knowledge, intent, and absence of mistake or accident in his false answer to the FBI's question. *See Pitre*, 960 F.2d at 1119; *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) (where a defendant's intent or knowledge is clearly at issue, evidence of prior acts may be admissible to prove intent or knowledge). Not only did the defendant in fact send packages to individuals other than his siblings, but he did so in such an orchestrated manner and for so long that it belies any notion that he simply forgot. And the fact that the defendant used Chippa to pay his brother who supported FIF via unlicensed money remitting, thereby evading traditional stringent anti-money laundering regulations, further evidences the importance of the defendant's arrangement with Chippa and his intention to lie to the FBI. This evidence is, thus, highly probative of myriad trial issues, each with its own propensity-free chain of reasoning.

In sum, the evidence detailed above is relevant to the elements of the charged offense or alternatively to establish motive or absence of mistake. Moreover, the evidence is more probative than it is prejudicial. For these reasons, it is admissible in the Government's case-in-chief.

## II. The Defendant Has Waived Any Selective-Prosecution Defense.

The government also requests the Court find the defendant has waived any selective-prosecution defense, precluding him from making such an argument to the jury.

The government has reason to believe the defendant may argue to the jury that the government targeted the defendant based on unconstitutional grounds. On September 19, 2018, the Connecticut-based Journal Inquirer published an article detailing the charges in this case. The defendant's attorney provided an emailed statement: "Mr. Khan did not lie at all to the FBI. There is no evidence of terrorism at all. This is only happening to Mr. Khan because he is Muslim." Alex Wood, *Manchester mechanic's cash questioned in terrorism probe*, JOURNAL INQUIRER (Sept. 19, 2018), https://www.journalinquirer.com/crime_and_courts/manchester-mechanic-s-cash-questioned-in-terrorism-probe/article_a5da2092-bc1c-11e8-8286-f33c1064fe4a.html (last visited Jul. 28, 2019).[2]

This line of argument should not reach a jury. As the Second Circuit has repeatedly explained, "a selective prosecution defense alleges 'a defect in the institution of the prosecution,' and as such 'is an issue for the court rather than the jury.'" *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997)). Indeed, the Federal Rules of Criminal Procedure make it clear that a defendant "must" make any argument regarding "a defect in instituting the prosecution" – including that the government selectively prosecuted him – in a "pretrial motion" to the court. Fed. R. Crim. P. 12(b)(3)(A)(iv); *see also Farhane*, 634 F.3d at 167 (citing Fed. R. Crim. P. 12(b)(3)(A)). This is because a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an

---

[2] The government includes defense counsel's statements to the Journal Inquirer not to cast aspersions upon the defendant or defense counsel, but simply to contextualize the government's request.

independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Regan*, 103 F.3d at 1082 (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)); *see also United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) ("[T]he issue of selective prosecution is one to be determined by the court … as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged.").

Here, the defendant did not assert a selective-prosecution defense in a pre-trial motion, and has thus waived the argument. He should, therefore, be precluded from raising any strain of the defense for the first time before a jury during trial. *United States v. Machorro-Xochicale*, 840 F.3d 545, 549-50 (8th Cir. 2016) (citing *Regan*, 103 F.3d at 1082); *see also United States v. Huber*, 404 F.3d 1047, 1054 (8th Cir. 2005) ("A selective-prosecution claim … must be raised before trial … Otherwise, it is waived."). Allowing the defendant to make the argument at trial would constitute an inappropriate end-run around both the Federal Rules of Criminal Procedure and the high burden established in *Armstrong*.[3]

---

[3] Indeed, to succeed on a selective prosecution claim, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *see also La Trieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999), *cert. denied*, 528 U.S. 1187 (2000) (same). In other words, a defendant cannot simply assert that the government acted improperly, but must make some prima facie showing beforehand: that, "(1) while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against the defendant, he has been singled out for prosecution, and (2) that the government's discriminatory selection of the defendant for prosecution has been invidious or in bad faith, i.e. based upon such impermissible considerations as race, religion or the desire to prevent his exercise of constitutional rights." *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992). The defendant has not, and cannot, make this showing. Rather, as explained in detail above, the government's investigation was legitimately based in part on the defendant's suspicious financial activity, shipments to Pakistan, and false statements to federal law enforcement. *See United States v. Carney*, 225 F.3d 646 (2d Cir. 2000) (unpublished) (affirming denial of the defendant's request for discovery on selective prosecution claim where the government presented legitimate reasons to explain its prosecutorial choices). Where the evidence

In short, the defendant has waived any selective-prosecution defense and should be precluded from making such an argument before the jury at trial.

### III. The Government Reserves the Right to Introduce the Defendant's Proffer Agreement and Proffered Statements in the Event the Defendant Opens the Door to them.

Finally, the government, in accordance with the defendant's proffer agreement and rebuttal waiver, reserves the right to introduce the defendant's proffered statements if the defendant opens the door to those statements at trial.

On January 16, 2018, the defendant and his then-attorney and an Urdu interpreter, participated in a proffer session with government counsel and federal law enforcement agents. The proffer was conducted subject to a written proffer agreement (the "Agreement") that stated in relevant part as follows:

> (2) If Client is prosecuted by the Government, the Government will not offer Client's proffer statements as evidence against Client at trial, except as provided below:
>
> (3) The Government may use Client's proffer statements:
>
>> (a) to prosecute Client for perjury, making false statements, obstruction of justice or any offense committed after the date of this Agreement;
>>
>> (b) to pursue any investigative leads suggested directly or indirectly by Client's proffer statements, and to use any evidence developed through pursuing such investigative leads against Client. Should Client be prosecuted, this Agreement eliminates the need for a hearing at which the Government might have to prove that the evidence it intends to introduce, whether at trial or any other phase of the case, is not derived from or otherwise tainted by Client's proffer statements;

---

to be presented would be insufficient as a matter of law, interests of judicial economy suggest that the jury should not be burdened with the matter. *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990).

12

>(c) in any proceeding, to cross-examine Client, to rebut any evidence or argument offered by Client or on Client's behalf, or to respond to any argument made or issue raised sua sponte by the Court;
>
>(d) in connection with Client's sentencing, in which event the Government will ask the Court not to consider Client's proffer statements in determining Client's sentencing guideline range; …

>(4) To the extent that this Agreement permits the Government to use Client's proffer statements, Client waives any argument that evidence of or derived from Client's proffer statements should be suppressed or not admitted as evidence under the United States Constitution, any statute, Federal Rule of Criminal Procedure 1 1 (f), Federal Rule of Evidence 410 or any other federal rule.
>
>…
>
>(6) This Agreement will be null and void if the Government determines that Client, whether directly or through someone acting on Client's behalf, has knowingly provided false or misleading statements or information to the Government or if Client becomes a fugitive from justice. The Government may then use any of Client's proffer statements without restriction.

The terms and conditions of that Agreement, including those set forth above, were explained to the defendant by his counsel in advance of the proffer. The terms of the Agreement were then explained to the defendant again by government counsel at the outset of the proffer. The defendant stated that he understood. Prior to beginning the proffer, the defendant executed a written acknowledgment, to the following effect:

>I have read the foregoing Proffer Agreement (or had it read and translated for me) and I have discussed it with my attorney. I understand all of the terms and the potential consequences of entering into this Proffer Agreement. I am entering into this Proffer Agreement because I choose to do so, not because I have been forced or coerced.

Internal Revenue Service Criminal Investigation Special Agent Michael Dragan was present for the proffer session and is prepared to testify that the terms of the proffer agreement were explained. The content of his proffer session is filed as a sealed exhibit hererto as Exhibit A.[4]

---

[4] Given the content of the proffer and the proximity of the trial, the government requests that this exhibit be filed under seal so as not to prejudice the defendant or impact the jury pool.

13

Should the defendant open the door by eliciting testimony in his direct case, his cross examination of witnesses, or his arguments to the jury that is contradicted or rebutted by his proffer statements, the government reserves the right to introduce any or all of his proffered statements. Generally, a defendant's statements made during plea negotiations, including proffers, are inadmissible. Federal Rule of Evidence (FRE) 410 provides:

> (a) Prohibited Uses.  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in plea discussions:
> . . .
>
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

FRE 410.  The Connecticut United States Attorney's Office's standard proffer agreement, however, contains a waiver of "all rights" under FRE 410 (and the analogous protections under Federal Rule of Criminal Procedure 11(f)).[5]  Proffer Agreement at ¶ 7.  The Agreement permits the government to introduce the defendant's statements made during a proffer session not only to impeach the defendant should he testify, but also to rebut any evidence or arguments offered by or on behalf of the defendant.  *Id.* at ¶¶ 5, 6.

In support of such contractual waivers, the Supreme Court has long recognized that a defendant's rights under FRE 410 are not absolute, but can be waived.  *See United States v.*

---

[5] Former versions of Federal Rule of Criminal Procedure 11 similarly barred the admission of statements made in plea negotiations against the defendant.  However, the current draft of Rule 11 provides that "[t]he admissibility or inadmissibility of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed.R.Crim.Pro. 11(f).  Because this provision merely codifies FRE 410 in the Federal Rules of Criminal Procedure, it has no independent force.  Thus, if FRE 410 bars the admission of a statement, it is also barred under Federal Rule of Criminal Procedure 11, but if FRE 410 permits the statement to be admitted, the Rule of Criminal Procedure cannot stand in the way. *See United States v. Paris*, No. 3:06CR0064(CFD), 2007 WL 1158118 at *3 (D. Conn. April 18, 2007).

*Mezzanatto*, 513 U.S. 196 (1995). In this Circuit, *United States v. Velez*, 354 F.3d 190 (2d Cir. 2004), clearly holds such waivers enforceable. There, the Court held that "where a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not the defendant testifies, is enforceable." *Id.* at 196. Thus rebuttal waivers, such as that used here, which permit the government to introduce the defendant's proffered statement to rebut arguments or assertions made by the defendant or on his behalf, are enforceable so long as the government can establish by a preponderance of the evidence that the defendant entered into them knowingly and voluntarily. *See United States v. Paris*, No. 3:06CR0064(CFD), 2007 WL 1158118 at 4 (D. Conn. April 18, 2007); *United States v. Barrow,* 400 F.3d 109 (2d Cir. 2005).

To determine whether the rebuttal waiver has been triggered, the Court must determine what a particular statement, question, or piece of evidence offered by defense counsel necessarily asserts. In the clearest case, proffered testimony may be admitted to challenge an assertion that directly contradicts the defendant's proffered statement, regardless of whether that assertion is made through the defendant's own testimony, defense witnesses, defense exhibits, or even arguments or questions posed by defense counsel. *See Barrow*, 400 F.3d at 117 n7 *(*citing *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998) ("a defendant can open the door to introduction of proffer statements as readily on the government's case-in-chief – for example, through cross-examination of a prosecution witness – as on his own case.")); *see also United States v. Murph*, 2011 WL 6317624 (2d Cir. Dec. 19, 2011) (affirming district court's admonishment to defense counsel that proposed cross-examination of prosecution witnesses would trigger rebuttal

15

waiver). In *Barrow*, for example, defense counsel's opening statement asserted that the real perpetrator of the crime was another individual, not the defendant. Counsel's assertion, although not evidence, directly contradicted the defendant's proffered admission that he committed the offense charged. Accordingly, the court allowed the admission of proffered statements to rebut the defenses claim. *Id.*

The application of the rebuttal waiver also applies where contrary facts are not stated directly, but are merely implied. *Id.* The court in *Barrow* detailed numerous, though not exhaustive, examples of implicit triggers:

> In *United States v. Ruffin*, 575 F.2d 346, 357 (2d Cir.1978), a tax evasion case, we affirmed the district court's decision to admit evidence showing that certain corporate expenditures had been used to buy defendant a mortgage. Although the evidence did not directly contradict any particular proof, we concluded that it did "rebut directly Ruffin's defense of insubstantial tax liability." *Id.* at 357. In *United States v. Bari*, 750 F.2d 1169, 1180 (2d Cir.1984), we ruled that an opening statement suggesting that defendant's injuries rendered his charged attempted escape improbable opened the door to rebuttal evidence of a different – and, therefore, not directly contradictory – escape attempt defendant made while suffering from a different physical disability. In *United States v. Khan*, 787 F.2d 28, 34 (2d Cir.1986), a drug smuggling case in which defense counsel told the jury that it would hear no evidence of defendant's wealth, we approved expert testimony about how inexpensively heroin could be purchased in Pakistan. Plainly, the evidence did not rebut the argument that defendant was not a wealthy man, but it did rebut the inference that a lack of means would have prevented him from committing the charged crime. *Id.* Finally, in *United States v. Kusek,* 844 F.2d 942, 948 (2d Cir.1988), another drug case, defense counsel opened by alluding to a large cash seizure from his client's home and stated that his client owned a restaurant that generated large sums of cash. The district court concluded that this suggestion of a legitimate source for the money was properly rebutted with evidence of defendant's post-arrest disavowal of any knowledge of the seized cash, *id.*, although the latter statement certainly did not disprove defendant's restaurant ownership.

*Barrow*, 400 F.3d at 117

In determining the scope of the government's rebuttal right, the Second Circuit was careful to note that "rebut" has its common meaning. *Id.* at 120. In other words, the admissibility of

16

proffered statements is not limited only to those statements that outright contradict the defense's claims; rather "rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary." *Id.* at 121.

Accordingly, should an appropriate triggering assertion be made by defense counsel in his statements to the jury or through cross-examination or defense witnesses, the government will seek to introduce those statements from the defendant's proffer which fairly rebut the triggering assertions.

## **CONCLUSION**

For the reasons articulated herein, the government respectfully requests the Court grant the above motions *in limine*.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY
/s/
VANESSA RICHARDS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05095
United States Attorney's Office
1000 Lafayette Boulevard, 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3000 / (203) 579-5575 (fax)

WILLIAM J. NARDINI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT16012
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700 / (203) 773-5376 (fax)

TROY A. EDWARDS, JR.
TRIAL ATTORNEY
Federal No. 5453741

17

United States Department of Justice
National Security Division
Counterterrorism Section
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 305-1601 / (202) 305-5564

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, a copy of the above submission was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                            **/s/**
                                            VANESSA RICHARDS
                                            ASSISTANT UNITED STATES ATTORNEY
                                            PHV 05095
                                            (203) 696-3000